UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>        Plaintiffs,<br><br>    v.<br><br>BRAUN ELECTRIC COMPANY,<br><br>        Defendant. | Case No.: 1:12-cv-01592 - LJO - JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY<br><br>(Doc. 38) |

       The United States Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") seeks to compel Defendant Braun Electric Company to produce documents responsive to the EEOC's Request for Production of Documents Set No. 6, Request No. 61. (Doc. 38). The parties filed a Joint Statement of Discovery Disagreements on January 3, 2014. (Doc. 34.)

       Braun argues that it should not be required to produce documents as to its worth because Plaintiff has not made a prima facie showing that punitive damages may be awarded and because it is confident that its motion for summary judgment will be successful. For the following reasons, the EEOC's motion to compel discovery is **GRANTED**.

**I.    Factual and Procedural History**

       Plaintiff initiated this action by filing a complaint against Braun Electric Company under Title VII of the Civil Rights Act of 1964 and Title 1 of the Civil Rights Act of 1991, seeking "to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Samara

1   Schmidt and other similarly situated individuals who were adversely affected by such practices." (Doc.
2   1 at 1.) According to the EEOC, Defendant subjected female employees, including Ms. Schmidt, "to
3   unwelcome harassment of a sexual nature which was sufficiently severe and pervasive to adversely
4   affect the terms and conditions of their employment and create a hostile work environment." (*Id.* at 2.)
5   The EEOC's prayer for relief included a request for punitive damages. (*Id.* at 6.) Defendant filed its
6   answer to the complaint on November 20, 2012. (Doc. 4.)

7   Plaintiff served its Request for Production of Documents, Set Six, on June 26, 2013. (Doc. 34
8   at 3.) In its Request for Production No. 61, the EEOC requested Defendant produce documents related
9   to its "current financial condition and projected financial condition," including balance sheets,
10  statements of income, and a statement of cash flow. (*Id.* at 11.) On July 29, 2013, Defendant objected
11  to the request, asserting the EEOC was requesting documents protected by privacy rights and privilege
12  under California law, the work product doctrine, and 26 U.S.C. § 7525. (*Id.* at 3, 12.) In addition,
13  Defendant objected on the grounds that the information requested was "irrelevant, immaterial, and not
14  reasonably calculated to lead to the discovery of admissible evidence as required by Federal Code of
15  Civil Procedure Rule 26(a)(3)(b)(1)." (*Id.* at 12.) Therefore, Defendant did not provide documents in
16  response to the EEOC's Request for Production No. 61. (*Id.*)

17  The EEOC sent Defendant a letter on August 1, 2013, asserting the "financial information was
18  relevant and general admissible at trial for punitive damages pursuant to well established precedents."
19  (Doc. 34 at 3.) Defendant responded to the letter on August 9, 2013, objecting "to the scope of the
20  request and again asserting privacy as the reason for refusing to provide responsive documents." (*Id.;*
21  *see also* Doc. 35-4 at 3-4.) Further, Defendant asserted the EEOC's request for financial information
22  was "premature at best," because the EEOC would be entitled to the information only after making "an
23  adequate showing of liability and malice or reckless indifference." (Doc. 35-4 at 3.)

24  The Court held a conference call with the parties regarding the discovery dispute on September
25  26, 2013. (*See* Doc. 21.) Defendant again objected to the scope of the document request, and the
26  EEOC indicated it was willing to work with Defendant to narrow the scope of Request No. 61. (Doc.
27  34 at 4.) Accordingly, the Court directed the parties to continue to meet and confer related to the issues
28  raised. (Doc. 21.)

On October 18, 2013, the EEOC reminded Defendant that the parties needed to resolve the issue of the financial documents. (Doc. 34 at 4; Doc. 39-1, Vuong Decl. ¶ 8.) The EEOC requested that Defendant provide a proposed scope for Request No. 61 on December 1, 2013. (*Id.*) During a deposition on December 6, 2013, Plaintiff's counsel inquired about the status of the financial documents and a proposed scope by Defendant. (*Id.*) According to the EEOC, "Counsel for Defendant responded that they were sill consulting with their clients but that Braun seemed unlikely to produce the responsive documents." (Doc. 34 at 4; Doc. 39-1, Vuong Decl. ¶ 10.) The EEOC sent another request to Defendant on December 13, 2013, to which Defendant replied that the financial records were irrelevant, and Braun Electric Company was "unwilling to provide a scope." (Doc. 34 at 4.)

The Court held a second conference call with the parties on December 16, 2013. (Doc. 33.) Plaintiff was authorized to file the motion to compel the production of responsive documents, now pending before the Court.

## II.     Scope of Discovery

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure and Evidence. Rule 26(b) provides:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things. . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Further, relevancy is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 427 U.S. 340, 351 (1978).

## III.    Requests for Production of Documents

A party may request documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Similarly, a party may serve a request "to permit entry onto designated land

3

1  or other property possessed or controlled by the responding party, so that the requesting party may
2  inspect, measure, survey, photograph, test, or sample the property . . ." Fed. R. Civ. P. 34(a)(2).  A
3  request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time,
4  place, and manner for the inspection; and specifies the form or forms in which electronic information
5  can be produced.  Fed. R. Civ. P. 34(b).  Thus, a request is sufficiently clear if it "places the party
6  upon 'reasonable notice of what is called for and what is not.'"  *Kidwiler v. Progressive Paloverde Ins.*
7  *Co.*, 192 F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D.
8  408, 412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide:*
9  *Federal Civil Procedure Before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is
10 whether a respondent of average intelligence would know what items to produce").

11         The responding party must respond in writing and is obliged to produce all specified relevant
12 and non-privileged documents, tangible things, or electronically stored information in its "possession,
13 custody, or control" on the date specified.  Fed. R. Civ. P. 34(a).  Actual possession, custody or control
14 is not required.  "A party may be ordered to produce a document in the possession of a non-party entity
15 if that party has a legal right to obtain the document or has control over the entity who is in possession
16 of the document."  *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995).  Such documents
17 include documents under the control of the party's attorney.  *Meeks v. Parson*, 2009 U.S. Dist. LEXIS
18 90283, 2009 WL 3303718 (E.D. Cal. September 18, 2009) (involving a subpoena to the CDCR); *Axler*
19 *v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000) (a "party must produce
20 otherwise discoverable documents that are in his attorneys' possession, custody or control").  In the
21 alternative, a party may state an objection to a request, including the reasons. Fed. R. Civ. P.
22 34(b)(2)(A)-(B).

23         If a party "fails to respond that inspection will be permitted - or fails to permit inspection - as
24 requested under Rule 34," the propounding party may make a motion to compel production of the
25 documents.  Fed. R. Civ. P. 37(a)(3)(B)(iv).  Further, "an evasive or incomplete disclosure, answer, or
26 response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).  "The
27 moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of
28

discovery." *Hasan v. Johnson*, 2012 U.S. Dist. LEXIS 21578 at *5 (E.D. Cal. Apr. 9, 2012) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

## IV.    Discussion and Analysis

In this action, the disputed discovery request concerns the interrogatories and requests related to Defendant's financial information. Specifically, in its Request for Production No. 61, the EEOC requested Defendant:

> IDENTIFY and produce all DOCUMENTS regarding YOUR current financial condition and projected financial condition. This includes but is not limited to the following:
>
> a. Balance sheets for the years 2010 through the present;
> b. Statements of income for 2010 to the present; and
> c. Statement of cash flow 2010 to the present.

(Doc. 34 at 11.) On July 29, 2013, Defendant objected to the request, asserting the EEOC "seeks documents protected by privacy rights and privilege under California Constitution Article 1, Rev. & Tax C. §19542 and 26 U.S.C. § 7525." (*Id.* at 3, 12.) In addition, Defendant asserted:

> Responding Party objects to this request to the extent it seeks documents protected by privileges or work product doctrine. Responding Party further objects to this request to the extent Plaintiff seeks Responding Party's confidential and/or proprietary information. Responding Party further objects to this request on the grounds that it is compound and the information is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence as required by Federal Code of Civil Procedure Rule 26(a)(3)(b)(1).

(*Id.* at 12.) Based upon these objections, Defendant did not provide documents in response to Request for Production No. 61. (*Id.*)

Opposing Plaintiff's motion to compel document production in response to Request No. 61, Defendant argues the discovery should be denied because (1) the financial information is not within the scope of discovery since Plaintiff has not established a prima facie claim for punitive damages and (2) "[f]inancial information is protected by the right to privacy under California law." (Doc. 34 at 19-20) (citing 42 U.S.C. § 1981a(b)(1); *Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992)).

### A.    Defendant's financial information is within the scope of discovery.

Although Defendant objects on relevancy grounds, this Court has determined previously that a defendant's "financial information is relevant" where a plaintiff states a claim for punitive damages. *EEOC v. Cal. Psych. Transitions*, 258 F.R.D. 391, 394-95 (E.D. Cal. 2009) (citing *City of Newport v.*

5

*Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981) (observing that evidence of a defendant's financial worth is traditionally admissible under federal law to evaluate the amount of punitive damages that should be awarded)); *see also Fair Hous. Council of Cent. Cal., Inc. v. Nunez*, 2011 U.S. Dist. LEXIS 127389, at *5-6 (E.D. Cal. Nov. 3, 2011) ("financial information is relevant to [a] plaintiff's claim for punitive damages and within the scope of permissible discovery").

Although the Ninth Circuit has not established "the parameters of the dissemination of financial information during discovery when punitive damages are alleged," a majority of federal courts do not require the plaintiff to demonstrate punitive damages will be recovered "to discover information relating to the defendant's financial condition in advance of trial." *Cal. Psych. Transitions*, 258 F.R.D. at 394-95. Rather, "a majority of federal courts permit discovery of financial information about the defendant without requiring [the] plaintiff to establish a *prima facie* case on the issue of damages." *CEH, Inc.*, 153 F.R.D. at 498 (citing, *e.g.*, *Fretz v. Keltner*, 109 F.R.D. 303, 310-11 (D.Kan. 1986); *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 329-30 (D.Mont. 1988); *In re Bergeson*, 112 F.R.D. 692, 696 (D.Mont. 1986); *St. Joseph Hospital v. INA Underwriters Ins. Co.*, 117 F.R.D. 24, 25-26 (D.Me. 1987); *Renshaw v. Ravert*, 82 F.R.D. 361, 363 (E.D.Pa. 1979); *American Ben. Life Ins. Co. v. Ille*, 87 F.R.D. 540, 542 (W.D.Okla. 1978)). Because "[t]he discovery of financial information [is] relevant to a putative damages claim," it is permissible under the Federal Rules of Civil Procedure without a prima facie showing by Plaintiff. *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 286 (C.D. Cal. 1998).

Notably, here the EEOC *does* allege facts that, if true, could give rise to an award of punitive damages. First, the complaint asserts, "The sexual harassment included, but was not limited to, the supervisor subjecting Claimant Schmidt and similarly situated female employees to sexually offensive comments and derogatory names on an almost daily basis. These comments included calling Claimant Schmidt a "slippery clitted bulldyke," commenting that he wanted to see Claimant Schmidt and a co-worker kiss and touch their breasts, and asking if Claimant Schmidt wanted "creamy jizz." Among the comments made to similarly situated individuals were comments about the individual's breasts." (Doc. 1 at 4) Second, the EEOC claims that "Claimant Schmidt and other similarly situated female employees were offended by the supervisor's sexual conduct, telling the supervisor to stop his conduct." *Id*. Third, the EEOC asserts, "Despite receiving a complaint in August 2010 that the

Alleged Discriminating Official was harassing female employees, Defendants failed to take reasonable steps to prevent and/or correct the harassment, but instead permitted the harassment to continue and worsen." *Id*. Finally, the EEOC alleges, "The unlawful employment practices complained of . . . were done with malice or with reckless indifference to the federally protected rights of Samara Schmidt and similarly situated individuals as the supervisor. Defendants were aware that the supervisor had sexually harassed females in the months prior to when the harassment of Samara Schmidt began but Defendants had failed to adequately address the violation of Title VII." *Id*. at 5.

Likewise, the EEOC presents evidence that offensive sexual comments were made to Schmidt and other female employees in the presence of high-level company officials. (Doc. 38-5 at 16; Doc. 38-6 at 18-19)  Indeed, the supervisor described in the complaint, Robertson, admitted that he commented to the vice president (Doc. 38-8 at 3-4) of the company—when discussing a sexual harassment complaint lodged against Robertson—that "I guess I can't ask Lindsey Miller to stick my dick down her throat anymore" to which the vice president responded merely with "Easy Cowboy." (Doc. 38-7 at 2) Likewise, the EEOC demonstrates that, though Robertson received a written warning regarding sexual harassment, he suffered no consequences as a result of the warning and two months later was awarded a bonus.  (Doc. 38-6 at 6-8; Doc. 38-7 at 5-6)

Even if the Court were to follow the minority approach, Braun makes no attempt to demonstrate why the facts set forth here do not constitute a prima facie case upon which punitive damages could be awarded.[1]  Instead, Braun argues that its defense to the claim will prevail.  This approach is not condoned by law and, notably, Braun cites to no authority that a defendant's belief in the merit of its defense is sufficient to preclude discovery of information related to punitive damages.

Although Defendant notes that in *EEOC v. Giumarra Vineyards Corp.*, 2012 WL 393333 (E.D. Cal. Feb. 6, 2012), the Eastern District determined financial information need not be produced despite a claim for punitive damages, the facts of the case distinguishable from those presently here.  In *EEOC v. Giumarra Vineyards Corp.*, the Court inquired of the plaintiff-intervenors "as to why they sought such financial information at th[e] particular stage of the proceedings, two years into the case, two

---

[1] Clearly, had Braun felt that the complaint was insufficient, the remedies under Fed. R. Civ. P. 12(b) and (f) were available to it.

7

previously-set discovery deadlines dates having passed, and still more than six months pre-trial;" the plaintiff-intervenors "responded that they sought the information to assist in the settlement process." *Id.,* 2012 WL 393333 at *3. However, the Court did not find this warranted disclosure of the financial information beyond the discovery deadline, especially in light of the fact that the plaintiff-intervenors had not shown they would be entitled to a substantial general damages award, and defendant's counsel "acknowledge[d] affirmatively his belief that Defendant was fully capable of satisfying even a seven figure judgment." *Id.* Finally, the Court noted that the information requested was "quite broad" because the plaintiff-intervenors "requested information as to all of Defendant's assets, liabilities, expenses, loans, loan payments, debts, taxes, income and bank accounts during the period from 2007 to the present." *Id.*

In contrast, here the EEOC made its discovery request for Defendant's financial information well before the non-expert discovery deadline expired. Moreover, Defendant has not asserted whether it could or could not satisfy a large judgment.[2] Finally, the information sought by Plaintiff is narrower in scope because the EEOC does not seek information such as Defendant's assets, liabilities, loan payments, or debts. Consequently, the financial information Plaintiff seeks through Request No. 61 is within the scope of permissible discovery, and Defendant's objections are **OVERRULED**.

**B.    Defendant's right to privacy does not preclude disclosure of financial information.**

Defendant argues that California law protects its right to privacy[3], and "[t]hese privacy rights are generally recognized in federal court." (Doc. 34 at 19) (citing *Johnson*, 971 F.2d at 1497). Previously, this Court has determined the right to privacy under California law "extends to financial

---

[2] Under 42 U.S.C. § 1981a(b)(1), punitive damages may be awarded "against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." However, compensatory damages, excluding wages, backpay, etc., other non-pecuniary losses and punitive damages are capped at certain amounts depending upon the number of people the Defendant employed.
   Here, Braun argues because the damages are capped at $200,000 per complainant, there is no need for discovery related to punitive damages. However, Braun does not document how many complainants are at issue or, even if only one, that Braun could satisfy a judgment on $200,000. Moreover, Braun ignores that the EEOC is entitled to demonstrate to the jury—and, hence, discover this information—the worth of Braun as a basis for an award of punitive damages.

[3] The Court does not address the other objections made in Defendant's response to the discovery request given they were not briefed related to this motion. The Court deems these objections waived. Moreover, any objection based upon privilege is waived given the failure to provide a privilege log or to sufficiently detail the materials withheld such that the EEOC could evaluate the propriety of the objection. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

privacy in litigation, but…is subject to balancing the needs of the litigation with the sensitivity of the information/ records sought." *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999) (quoting *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 657 (1975)).  Consequently, the right to privacy is not an "absolute bar to discovery," and "may be subject to invasion." *Cal. Psychiatric Transitions*, 258 F.R.D. at 395.  Notably, a party's interest in the confidentiality of financial information may be adequately addressed via a protected order.  *Oakes*, 179 F.R.D. at 284; *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 38 (1994) (privacy concerns "are assuaged if intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know").

Because Defendant's concerns regarding privacy may be addressed by protective order, the objections on privacy grounds are **OVERRULED**. *See Cal. Psychiatric Transitions*, 258 F.R.D. at 395

## V. Conclusion and Order

Defendant's financial information is relevant to the EEOC's claim for punitive damages, and is within the scope of discovery pursuant to the Federal Rules of Civil Procedure.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion to compel discovery is **GRANTED**;
2. Within 10 days, counsel SHALL file a joint, proposed protective order addressing the maintaining the confidentiality of the financial records at issue;
3. Defendant **SHALL** produce any documents responsive to Request for Production, Set Six, No. 61 **no later than five court days after** the Court issues the protective order.

IT IS SO ORDERED.

Dated:  **January 24, 2014**        /s/ Jennifer L. Thurston
                                    UNITED STATES MAGISTRATE JUDGE