1  Daniel K. Klingenberger, Esq. (SBN 131134)
   Stephanie Hamilton Borchers (SBN 192172)
2  Micah K. Nilsson, Esq. (SBN 250919)
   DOWLING AARON INCORPORATED
3  5080 California Avenue, Suite 200
   Bakersfield, California 93309
4  Telephone: (661) 716-3000
   Facsimile: (661) 716-3005
5  dkk@dowlingaaron.com
   sborchers@dowlingaaron.com
6  mnilsson@dowlingaaron.com

7  Attorneys for Defendant
   BRAUN ELECTRIC COMPANY
8

9

10              UNITED STATES DISTRICT COURT

11         FOR THE EASTERN DISTRICT OF CALIFORNIA

12                   (FRESNO DIVISION)

13

14  U.S. EQUAL EMPLOYMENT              Case No. 1:12-cv-01592-LJO-JLT
    OPPORTUNITY COMMISSION,
15                                     **DECLARATION OF STEPHANIE**
                        Plaintiffs,    **HAMILTON BORCHERS IN SUPPORT**
16                                     **OF MOTION FOR SUMMARY**
    vs.                                **JUDGMENT OR, IN THE ALTERNATIVE,**
17                                     **SUMMARY ADJUDICATION**
    BRAUN ELECTRIC COMPANY, and DOES
18  1-10, Inclusive,                   Date:        March 18, 2014
                        Defendants.    Time:        8:30 a.m.
19  _____   Courtroom:   4

20                                     Trial Date:  July 8, 2014

21         I, Stephanie Hamilton Borchers, declare:

22         1.     I am an attorney admitted to practice in all of the courts of the State of

23  California and the Eastern District of California.  I am a member of the law firm of Dowling

24  Aaron Incorporated, attorneys of record in the above-entitled action for Defendant BRAUN

25  ELECTRIC COMPANY.   I make this declaration in support of Defendant's Motion for

26  Summary Judgment or, in the alternative, Summary Adjudication in the above captioned matter.

27         2.     I have personal knowledge of the matters stated in this declaration and, if

28  called as a witness, I could and would competently testify thereto under oath.

DOWLING|AARON
INCORPORATED
ATTORNEYS AND COUNSELORS AT LAW

3.     The operative Complaint in this matter was filed by Plaintiff in this Court on September 27, 2012.  A true and correct copy of the Complaint is attached hereto as Exhibit "A."

4.     Charging party Samara Schmidt's deposition was taken on May 10, 2013 and July 22, 2013.  A true and correct copy of the pertinent portions of Ms. Schmidt's deposition transcript are attached hereto as Exhibit "B."   Further, pursuant to Local Rules 133(j) and 250.1(a) of the United States District Court for the Eastern District of California, a true and correct copy of this deposition in its entirety will be submitted to the email box of the Honorable Lawrence J. O'Neill and will likewise be emailed to all parties appearing in this action.

5.     Plaintiff United States Equal Opportunity Commission's Initial Disclosures in this action were served on Defendant on January 16, 2013.  The Disclosure does not list Debra Rios as a complaining party or as a witness. A true and correct copy of the Initial Disclosures is attached hereto as Exhibit "C."

6.     Complaining party Debra Rios's deposition was taken on December 20, 2103.  A true and correct copy of the pertinent portions of Ms. Rios's deposition transcript are attached hereto as Exhibit "D."   Further, pursuant to Local Rules 133(j) and 250.1(a) of the United States District Court for the Eastern District of California, a true and correct copy of this deposition in its entirety will be submitted to the email box of the Honorable Lawrence J. O'Neill and will likewise be emailed to all parties appearing in this action.

7.     Pursuant to the Court's scheduling order, I met and conferred with counsel for Plaintiff regarding the merits of summary judgment, the parties' proposed issues for summary judgment, and to arrive at facts that we may be able to stipulate to for purposes of this motion. While the parties ultimately exchanged proposed stipulated facts and Defendant stipulated to some the EEOC proposed in support of its motion for summary judgment, an agreement was not reached regarding a joint stipulation given the wide divergence in the parties' positions.  In the event the EEOC elects to accept some of Defendant's conceded facts and files a joint statement with its motion for summary judgment, I will direct the court to those material facts in the Defendant's separate statement that may become moot.

DOWLING | AARON
INCORPORATED
ATTORNEYS AND COUNSELORS AT LAW

DECL. OF STEPHANIE HAMILTON BORCHERS     2     Case No. 1:12-cv-01592-LJO-JLT
IN SUPPORT OF MOTION FOR SUMMARY OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1         I declare under penalty of perjury under the laws of the United States of America

2 and the State of California that the foregoing is true and correct and that this Declaration was

3 executed on February 7, 2014, in Fresno, California.

4

5                                                                                                   

6                                     STEPHANIE HAMILTON BORCHERS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   81019-004\01421229.DOC.

DECL. OF STEPHANIE HAMILTON BORCHERS    3            Case No. 1:12-cv-01592-LJO-JLT
IN SUPPORT OF MOTION FOR SUMMARY OR,
IN THE ALTERNATIVE, SUMMARY ADJUDICATION

**EXHIBIT A**

Anna Y. Park, SBN 164242
Rumduol K. Vuong, SBN 264392
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> BRAUN ELECTRIC COMPANY, and DOES 1-10, Inclusive, <br> Defendants. | Case No.: <br><br> **COMPLAINT** <br> • **CIVIL RIGHTS** <br> • **EMPLOYMENT DISCRIMINATION** <br> **(42 U.S.C. §§ 2000e, et seq.)** <br><br> **JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an employment discrimination action brought by the United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Samara Schmidt and other similarly situated individuals who were adversely affected by such practices. As alleged with greater particularity in Paragraph 10 herein, the Commission alleges

1  that Defendant Braun Electric Company ("Braun") and Does 1-10 (collectively referred to

2  herein as "Defendants"), subjected Claimant Samara Schmidt, as well as other similarly

3  situated female employees, to unwelcome harassment of a sexual nature which was sufficiently

4  severe and pervasive to adversely affect the terms and conditions of their employment and

5  create a hostile work environment.

## JURISDICTION AND VENUE

6

7       1.       Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

8  1343, and 1345.

9       2.       This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of

10  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title

11  VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

12      3.       The employment practices alleged to be unlawful were committed within the

13  jurisdiction of the United States District Court for the Eastern District of California.

## PARTIES

14

15      4.       Plaintiff EEOC is the agency of the United States of America charged with the

16  administration, interpretation and enforcement of Title VII, and is expressly authorized to bring

17  this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3) and

18  § 2000e-6.

19      5.       At all relevant times, Defendant Braun has continuously done business within

20  California and the jurisdiction of the United States District Court for the Eastern District of

21  California.

22      6.       At all relevant times, Defendant Braun has continuously employed fifteen (15) or

23  more persons.

24      7.       At all relevant times, Defendant Braun has continuously been employers

25  engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h)

26  of Title VII, 42 U.S.C. § 2000e (b), (g), and (h).

27      8.       Plaintiff is ignorant of the true names and capacities of Defendants sued as Does

28  1 through 10, inclusive (the "Doe Defendants"). Therefore, Plaintiff sues said Doe Defendants

1   by such fictitious names.  Plaintiff reserves the right to amend the complaint to name the Doe

2   Defendants as they become known.  Plaintiff alleges that each of the Defendants named as Doe

3   Defendants was in some manner responsible for the acts and omissions alleged herein and

4   Plaintiff will amend the complaint to allege such responsibility when Plaintiff has ascertained

5   the identity of the Doe Defendants.

6            9.      All of the acts and failures to act alleged herein were duly performed by and

7   attributable to all Defendants, each acting as a successor, alter ego, joint employer, integrated

8   enterprise, agent, employee, successor, or under the direction and control of the others, except

9   as otherwise specifically alleged.  The alleged acts and failures to act were within the scope of

10  such agency and/or employment, and each Defendant participated in, approved and/or ratified

11  the other Defendants' unlawful acts and omissions alleged in this complaint.  Whenever and

12  wherever reference is made in this Complaint to any act by a Defendant or Defendants, such

13  allegations and reference shall also be deemed to mean the acts and failures to act of each

14  Defendant acting individually, jointly, and/or severally.

15                              **STATEMENT OF CLAIMS**

16           1.      More than thirty (30) days prior to the filing of this lawsuit, Claimant Samara

17  Schmidt filed a charge of discrimination with the Commission alleging that Defendant Braun

18  violated Title VII.  The Commission conducted an investigation into the charge by Claimant

19  Schmidt.  At the conclusion of this investigation, the Commission issued a Letter of

20  Determination finding that Defendants subjected Claimant Schmidt and similarly situated

21  individuals were subjected to unlawful employment discrimination based upon their sex, female,

22  in violation of Title VII.  Prior to instituting this lawsuit, the EEOC attempted to eliminate the

23  unlawful employment practices herein alleged and to effect voluntary compliance with Title VII

24  through informal methods of conciliation, conference, and persuasion within the meaning of

25  Section 706(b) of Title VII, 42 U.S.C. Sections 2000e-5(b).  The Commission provided a

26  proposed conciliation agreement on July 12, 2012 and conducted an in person conciliation

27  conference on July 16, 2012.  All conditions precedent to the institution of this lawsuit have been

28  fulfilled.

1       10.     Since at least August 2010, Defendants have engaged in unlawful employment

2    practices at their Belridge and Taft facilities in violation of Section 703(a) of Title VII, 42

3    U.S.C. § 2000e-2(a) when they subjected Claimant Samara Schmidt and similarly situated

4    female employees to unwelcome sexual conduct by a male supervisor ("supervisor"), which

5    was sufficiently severe and pervasive to adversely affect the terms and conditions of their

6    employment and which created a hostile work environment based on their sex (female).

7          a)  The sexual harassment included, but was not limited to, the supervisor

8              subjecting Claimant Schmidt and similarly situated female employees to

9              sexually offensive comments and derogatory names on an almost daily

10              basis.  These comments included calling Claimant Schmidt a "slippery

11              clitted bulldyke," commenting that he wanted to see Claimant Schmidt

12              and a co-worker kiss and touch their breasts, and asking if Claimant

13              Schmidt wanted "creamy jizz."  Among the comments made to similarly

14              situated individuals were comments about the individual's breasts.

15          b)  The sexual harassment was unwelcome.  Claimant Schmidt and other

16              similarly situated female employees were offended by the supervisor's

17              sexual conduct, telling the supervisor to stop his conduct.

18          c)  The sexual harassment was sufficiently severe and pervasive to create a

19              hostile work environment.  The sexual conduct occurred frequently

20              throughout the employment of Claimant Schmidt and other similarly

21              situated female employees.  The conduct was also severe as it included

22              sexually graphic remarks.

23          d)  Defendants are liable for the hostile work environment created by the

24              Alleged Discriminating Official.  Despite receiving a complaint in August

25              2010 that the Alleged Discriminating Official was harassing female

26              employees, Defendants failed to take reasonable steps to prevent and/or

27              correct the harassment, but instead permitted the harassment to continue

28              and worsen.

1    11.   The effect of the practices complained of, as described above, has been to deprive

2  Claimant Samara Schmidt and similarly situated aggrieved individuals of equal employment

3  opportunities and otherwise adversely affect their status as employees, because of their sex,

4  female.

5    12.   The unlawful employment practices complained of in Paragraph 10 above were

6  intentional and caused Samara Schmidt and similarly situated individuals to suffer emotional

7  distress.

8    13.   The unlawful employment practices complained of in Paragraph 10 above were

9  done with malice or with reckless indifference to the federally protected rights of Samara

10  Schmidt and similarly situated individuals as the supervisor.  Defendants were aware that the

11  supervisor had sexually harassed females in the months prior to when the harassment of Samara

12  Schmidt began but Defendants had failed to adequately address the violation of Title VII.

13                               **PRAYER FOR RELIEF**

14    Wherefore, the Commission respectfully requests that this Court:

15    A.   Grant a permanent injunction enjoining Defendants, their officers, successors,

16  assigns, and all persons in active concert or participation with them, from engaging in sexual

17  harassment, and any other employment practice which discriminate on the basis of sex.

18    B.   Order Defendants to institute and carry out policies, practices, and programs

19  which provide equal employment opportunities for women, and which eradicate the effects of its

20  past unlawful employment practices.

21    C.   Order Defendants to make whole Samara Schmidt and similarly situated

22  individuals by providing compensation for past and future pecuniary losses resulting from the

23  unlawful employment practices described in Paragraph 10 above, in amounts to be determined at

24  trial.

25    D.   Order Defendants to make whole Samara Schmidt and similarly situated

26  individuals by providing compensation for past and future non pecuniary losses resulting from

27  the unlawful practices complained of in Paragraph 10 above, in amounts to be determined at

28  trial.

Case 1:12-cv-01592-LJO-SMS   Document 1   Filed 09/27/12   Page 6 of 6

1    E.    Order Defendants to pay Samara Schmidt and similarly situated individuals

2    punitive damages for their malicious and/or reckless conduct described in Paragraph 10 above, in

3    amounts to be determined at trial.

4    F.    Grant such further relief as the Court deems necessary and proper in the public

5    interest.

6    G.    Award the Commission its costs of this action.

7    **JURY TRIAL DEMAND**

8    The Commission requests a jury trial on all questions of fact raised by its complaint.

9

10

11   Dated: September 20, 2012              Respectfully Submitted

12                                          P. DAVID LOPEZ,
13                                          General Counsel

14                                          JAMES LEE,
15                                          Deputy General Counsel

16                                          GWENDOLYN YOUNG REAMS,
17                                          Associate General Counsel

18                                          U.S. EQUAL EMPLOYMENT
                                            OPPORTUNITY COMMISSION
19                                          131 M Street, NE
20                                          Washington, DC 20507

21                                          By: _____
22                                               Anna Y. Park,
                                                 Regional Attorney
23                                               U.S. EQUAL EMPLOYMENT
                                                 OPPORTUNITY COMMISSION
24

25

26

27

28

**EXHIBIT B**

1       1                    UNITED STATES DISTRICT COURT

2       2              FOR THE EASTERN DISTRICT OF CALIFORNIA

3       3                         (FRESNO DIVISION)

4       4                    _____

5       5

6       6    U.S. EQUAL EMPLOYMENT          )Volume I
             OPPORTUNITY COMMISSION,        )
7       7                                   )
                          Plaintiff,        )
8       8                                   )
                   vs.                      )No. 1:12-cv-01592-LJO-JLT
9       9                                   )
                                            )
10      10   BRAUN ELECTRIC COMPANY,        )
             and DOES 1-10, Inclusive,      )
11      11                                  )
                          Defendants.       )
12      12   _____)

13      13

14      14

15      15                   VIDEOTAPED DEPOSITION

16      16                            OF

17      17                  SAMARA HELEEN SCHMIDT

18      18                    Friday, May 10, 2013

19      19                   Bakersfield, California

20      20

21      21   Reported by:  Terri L. Haupt, CSR No. 6111

22      22

23      23

24      24

25      25

| | | | |
|---|---|---|---|
| 1 | 09:59:54 | 1 | A.   Maybe 30 minutes. |
| 2 | 09:59:57 | 2 | Q.   Did you go through any orientation other than |
| 3 | 10:00:05 | 3 | that 30-minute meeting? |
| 4 | 10:00:06 | 4 | A.   Not that I can recall. |
| 5 | 10:00:08 | 5 | Q.   Did you receive a copy of the employee handbook |
| 6 | 10:00:16 | 6 | at that time? |
| 7 | 10:00:16 | 7 | A.   Yes. |
| 8 | 10:00:17 | 8 | Q.   Did you read it? |
| 9 | 10:00:21 | 9 | A.   Not that I recall. |
| 10 | 10:00:24 | 10 | Q.   Did you get your own copy to keep? |
| 11 | 10:00:28 | 11 | A.   Yes. |
| 12 | 10:00:28 | 12 | Q.   After you became a regular employee in about |
| 13 | 10:00:41 | 13 | July of 2010, did you continue to report to |
| 14 | 10:00:45 | 14 | Tracy Callahan? |
| 15 | 10:00:47 | 15 | A.   I'm sorry.  Say that again.  I'm sorry. |
| 16 | 10:00:50 | 16 | Q.   After you became a regular employee in about |
| 17 | 10:00:55 | 17 | July of 2010, did you continue to report to |
| 18 | 10:00:57 | 18 | Tracy Callahan? |
| 19 | 10:00:59 | 19 | A.   Yes. |
| 20 | 10:00:59 | 20 | Q.   Did you get along with Tracy Callahan? |
| 21 | 10:01:06 | 21 | A.   Yes. |
| 22 | 10:01:06 | 22 | Q.   You liked working for her? |
| 23 | 10:01:08 | 23 | A.   Yes, I did. |
| 24 | 10:01:09 | 24 | Q.   Did you have a good relationship with |
| 25 | 10:01:18 | 25 | Brenda Wood when you were there? |

| | | | |
|---|---|---|---|
| 1 | 10:13:21 | 1 | A.   No. |
| 2 | 10:14:06 | 2 | MR. KLINGENBERGER:  I'm going to put a document |
| 3 | 10:14:08 | 3 | in front of you that I'll have marked as Exhibit 1 to |
| 4 | 10:14:11 | 4 | the deposition. |
| 5 | | 5 | (Defendant's Exhibit No. 1 was marked |
| 6 | 10:14:13 | 6 | for identification.) |
| 7 | 10:14:13 | 7 | BY MR. KLINGENBERGER: |
| 8 | 10:14:31 | 8 | Q.   And while you're looking at it, I'll identify |
| 9 | 10:14:33 | 9 | it for the record as a one-page document.  It's |
| 10 | 10:14:37 | 10 | Bates-stamped BE40.  And it's entitled "Acknowledgment |
| 11 | 10:14:42 | 11 | of Receipt and At-Will Employment." |
| 12 | 10:14:45 | 12 | Do you recognize this document, Ms. Schmidt? |
| 13 | 10:14:48 | 13 | A.   I'm still reading it. |
| 14 | 10:14:49 | 14 | Q.   Okay.  Let me know when you've finished. |
| 15 | 10:15:17 | 15 | A.   Okay.  I'm done. |
| 16 | 10:15:18 | 16 | Q.   All right.  Do you recognize this document? |
| 17 | 10:15:20 | 17 | A.   Yes. |
| 18 | 10:15:22 | 18 | Q.   Is that your signature on the line that has |
| 19 | 10:15:29 | 19 | "Employee's Signature" typed underneath it? |
| 20 | 10:15:32 | 20 | A.   Yes. |
| 21 | 10:15:33 | 21 | Q.   And it's dated July 19, 2010; is that right? |
| 22 | 10:15:37 | 22 | A.   Correct. |
| 23 | 10:15:37 | 23 | Q.   And did you write that date? |
| 24 | 10:15:38 | 24 | A.   Yes, I did. |
| 25 | 10:15:39 | 25 | Q.   And is that the time when you were moving from |

| | | | |
|---|---|---|---|
| 1 | 10:15:43 | 1 | being the temp employee to being a regular employee for |
| 2 | 10:15:46 | 2 | Braun? |
| 3 | 10:15:47 | 3 | A.   I'm not sure if that was the date.  I don't |
| 4 | 10:15:52 | 4 | recall exactly in July when it was. |
| 5 | 10:15:55 | 5 | Q.   You're the one who wrote the July 19, 2010, |
| 6 | 10:15:59 | 6 | date, though; right? |
| 7 | 10:15:59 | 7 | A.   Yes. |
| 8 | 10:16:00 | 8 | Q.   And when you signed this, did you read it?  Do |
| 9 | 10:16:03 | 9 | you recall? |
| 10 | 10:16:04 | 10 | A.   I don't recall if I did.  I mean, I'm -- I |
| 11 | 10:16:07 | 11 | signed it, so I'm thinking, yes, I did. |
| 12 | 10:16:10 | 12 | Q.   And this indicates that you received a copy of |
| 13 | 10:16:12 | 13 | the company's employee handbook there on the first line. |
| 14 | 10:16:15 | 14 | Do you see that? |
| 15 | 10:16:16 | 15 | A.   Yes. |
| 16 | 10:16:16 | 16 | Q.   And do you recall that that July 19th date was |
| 17 | 10:16:21 | 17 | when you received a copy of the employee handbook? |
| 18 | 10:16:26 | 18 | A.   Yes. |
| 19 | 10:16:26 | 19 | Q.   And the second sentence says that "I understand |
| 20 | 10:16:28 | 20 | and agree that it is my responsibility to read and |
| 21 | 10:16:30 | 21 | familiarize myself with the policies and procedures |
| 22 | 10:16:33 | 22 | contained in the handbook." |
| 23 | 10:16:34 | 23 | Do you see that? |
| 24 | 10:16:35 | 24 | A.   Yes. |
| 25 | 10:16:36 | 25 | Q.   And do you recall whether you, in fact, did -- |

```
10:16:39  1        A.   I don't recall.
10:16:40  2        Q.   -- familiarize yourself with the policies and
10:16:43  3   procedures in the employee handbook?
10:16:45  4        A.   I don't recall if I did or not.
10:16:47  5        Q.   You may have, you just don't recall?
10:16:49  6        A.   Possibly, yes.
10:16:50  7             MR. KLINGENBERGER:  Okay.  I'll put another
10:16:55  8   document in front of you that I'll have marked as
10:16:57  9   Exhibit 2.
10:17:08 10             I'm going to give her this one.
         11             (Defendant's Exhibit No. 2 was marked
         12             for identification.)
         13   BY MR. KLINGENBERGER:
10:17:21 14        Q.   Take a -- take look at this, if you will, and
10:17:23 15   while you are, I'll identify the record -- identify it
10:17:25 16   for the record as a two-page document that's
10:17:29 17   Bates-stamped BE50 and 51 and entitled "Unlawful
10:17:34 18   Harassment."
10:19:47 19             Have you had a chance to review the document?
10:19:49 20        A.   Yes, I did.
10:19:50 21        Q.   Do you recognize this document?
10:19:52 22        A.   Other than it being a sexually harassment --
10:20:00 23   regarding sexual harassment.
10:20:01 24        Q.   Okay.  Do you recall this being part of the
10:20:03 25   employee handbook that you were provided a copy of?
```

| | | |
|---|---|---|
| 1 | 12:01:56 1 | Q.   Did you hear Lindsay Miller talk to |
| 2 | 12:02:08 2 | Dennis Brown or Terry Yeargan about Dave Robertson? |
| 3 | 12:02:13 3 | A.   No. |
| 4 | 12:02:14 4 | Q.   Did you ever talk to Lindsay Miller about |
| 5 | 12:02:30 5 | whether you or she should complain to the company about |
| 6 | 12:02:35 6 | Dave Robertson? |
| 7 | 12:02:36 7 | A.   No. |
| 8 | 12:02:38 8 | Q.   Did you ever suggest to Lindsay Miller that she |
| 9 | 12:02:45 9 | should tell HR if she was upset with anything that |
| 10 | 12:02:49 10 | Dave Robertson was saying to her? |
| 11 | 12:02:51 11 | A.   No, because there had already been a complaint |
| 12 | 12:02:56 12 | by five people and nothing -- nothing happened. |
| 13 | 12:02:59 13 | Q.   Well, all you know is that Lindsay Miller told |
| 14 | 12:03:03 14 | you that there was a complaint; right? |
| 15 | 12:03:05 15 | A.   Correct. |
| 16 | 12:03:06 16 | Q.   You have -- you had no personal knowledge that |
| 17 | 12:03:09 17 | any complaint had ever been made; correct? |
| 18 | 12:03:11 18 | A.   Not until May of 2011 when I quit. |
| 19 | 12:03:16 19 | Q.   So my question was whether you ever suggested |
| 20 | 12:03:20 20 | to Lindsay Miller that she should complain to HR about |
| 21 | 12:03:24 21 | Dave Robertson. |
| 22 | 12:03:25 22 | A.   No. |
| 23 | 12:03:26 23 | Q.   Did Lindsay Miller ever suggest to you that you |
| 24 | 12:03:30 24 | should complain to HR about Dave Robertson? |
| 25 | 12:03:33 25 | A.   We had a conversation regarding it, and we |

```
 1   12:03:38  1    didn't see any reason to complain because Lindsay knew
 2   12:03:42  2    there had been a complaint because she got talked to or
 3   12:03:45  3    asked questions about it and nothing changed.
 4   12:03:47  4         Q.   After something happened in August of 2010, did
 5   12:04:02  5    you suggest to Lindsay Miller that she should follow up
 6   12:04:06  6    and tell the company that nothing had changed?
 7   12:04:09  7         A.   Well, I got out there in September.  No, I
 8   12:04:15  8    didn't mention anything.
 9   12:04:16  9         Q.   Did you ever consider telling the company that
10   12:04:21 10    things were still going on and nothing had changed?
11   12:04:24 11         A.   No.
12   12:04:25 12         Q.   In this entry that you made here regarding
13   12:04:36 13    No. 5, you state that "Braun Electric wrote up
14   12:04:40 14    Dave Robertson and thought it had stopped."
15   12:04:44 15         Do you see that?
16   12:04:45 16         A.   Yes.
17   12:04:45 17         Q.   How -- how did you know or what caused you to
18   12:04:49 18    think that Braun Electric wrote Dave Robertson up?
19   12:04:52 19         A.   Brenda told me during my exit interview.
20   12:04:55 20         Q.   Was that the first you'd heard that he had been
21   12:04:58 21    written up?
22   12:04:59 22         A.   Yes.
23   12:04:59 23         Q.   Did that surprise you?
24   12:05:01 24         A.   Yes.
25   12:05:04 25         Q.   And you wrote "and thought it had stopped."  Is
```

1   12:05:11  1   that something that Brenda had also told you during your

2   12:05:14  2   exit interview, that they thought it had stopped?

3   12:05:17  3       A.   Correct.

4   12:05:18  4       Q.   And are you aware of any information that

5   12:05:33  5   either Brenda Wood or anybody with the company knew,

6   12:05:37  6   between August 2010 and your exit interview, that would

7   12:05:43  7   have suggested to them that it had not stopped?

8   12:05:47  8       A.   Okay.  I'm sorry.  Ask me that again.

9   12:05:50  9            MR. KLINGENBERGER:  Can you read the question

10  12:05:51 10   back, please.

11  12:05:52 11            (Record read.)

12  12:06:07 12            MS. VUONG:  I'm going to object as to vague.

13  12:06:09 13            Are you talking about anyone from the company

14  12:06:11 14   that's management level employees or any employees

15  12:06:14 15   period?

16  12:06:15 16            MR. KLINGENBERGER:  We'll start with anything,

17  12:06:16 17   yeah.

18  12:06:16 18            MS. VUONG:  Okay.

19  12:06:18 19            THE WITNESS:  Okay.  So I'm sorry.  You're

20  12:06:20 20   going to have to read the question again to me.  I'm

21  12:06:22 21   sorry.

22  12:06:22 22            (Record read.)

23  12:06:40 23            THE WITNESS:  Can you rephrase that for me,

24  12:06:43 24   please?

25  12:06:44 25            MR. KLINGENBERGER:  Sure.

```
1   14:42:26  1        Q.   Okay.  And so what you're saying here today is
2   14:42:29  2   that the reference to December 2010 is wrong?
3   14:42:32  3        A.   It says "on or about December '10."
4   14:42:34  4        Q.   And by "on or about," what you really meant was
5   14:42:40  5   September?
6   14:42:40  6        A.   It meant -- yeah, like before December and
7   14:42:43  7   continuing on.
8   14:42:44  8        Q.   You state here, "I reported this treatment to
9   14:43:00  9   Human Resources Manager, Brenda Woods, and other members
10  14:43:03 10   of management.  No action was taken."
11  14:43:06 11             Do you see that?
12  14:43:07 12        A.   Yes.
13  14:43:07 13        Q.   You actually didn't talk to Brenda Wood about
14  14:43:10 14   this stuff until you were about to leave the employment
15  14:43:14 15   of Braun Electric; correct?
16  14:43:16 16        A.   Correct.
17  14:43:16 17        Q.   And your reference here that you were told that
18  14:43:21 18   Robertson was old school oil field, that comment
19  14:43:26 19   allegedly was also made as you were about to leave the
20  14:43:30 20   company; right?
21  14:43:31 21        A.   Correct.
22  14:43:40 22             MR. KLINGENBERGER:  I'm going to put another
23  14:43:41 23   document in front of you that we'll mark as Exhibit 8.
24  14:43:54 24             Let me switch -- I wrote "8" on the bottom of
25  14:44:04 25   that one so let me switch it out.  Just put the sticker
```

SAMARA HELEEN SCHMIDT                                           05-10-13

Page 220

```
 1    STATE OF CALIFORNIA )
                          ) ss.
 2    COUNTY OF KERN      )

 3

 4

 5           I, Terri L. Haupt, a Certified Shorthand

 6    Reporter in the State of California, holding Certificate

 7    No. 6111, do hereby certify that SAMARA HELEEN SCHMIDT,

 8    the witness named in the foregoing deposition, was by me

 9    duly sworn; that said deposition was taken Friday,

10    May 10, 2013, at the time and place set forth on the

11    first page hereof.

12           That upon the taking of the deposition, the

13    words of the witness were written down by me in

14    stenotypy and thereafter transcribed by computer under

15    my supervision; that the foregoing is a true and correct

16    transcript of the testimony given by the witness.

17           I further certify that I am neither counsel for

18    nor in any way related to any party to said action, nor

19    in any way interested in the result or outcome thereof.

20           Dated this 23rd day of May, 2013, at

21    Bakersfield, California.

22

23                    _____
                      Terri L. Haupt, CSR No. 6111
24

25
```

1       UNITED STATES DISTRICT COURT

2       FOR THE EASTERN DISTRICT OF CALIFORNIA

3       (FRESNO DIVISION)

4       _____

5

6    U.S. EQUAL EMPLOYMENT          )Volume II
     OPPORTUNITY COMMISSION,        )Page 221
7                                   )
                Plaintiff,          )
8                                   )
            vs.                     )No. 1:12-cv-01592-LJO-JLT
9                                   )
                                    )
10   BRAUN ELECTRIC COMPANY,        )
     and DOES 1-10, Inclusive,      )
11                                  )
                Defendants.         )
12   _____)

13

14

15              VIDEOTAPED DEPOSITION

16                     OF

17             SAMARA HELEEN SCHMIDT

18             Monday, July 22, 2013

19             Bakersfield, California

20

21   Reported by:  Terri L. Haupt, CSR No. 6111

22

23

24

25

```
 1    13:18:56  1           MR. KLINGENBERGER:  Beyond the temp.

 2    13:18:57  2    BY MR. KLINGENBERGER:

 3    13:18:57  3       Q.   When you began working directly for

 4    13:18:59  4    Braun Electric, after you were no longer a temp, did you

 5    13:19:03  5    go through an orientation at that time with

 6    13:19:05  6    Braun Electric?

 7    13:19:05  7       A.   Yes.  Once they hired me, yes.

 8    13:19:07  8       Q.   And was that orientation something provided by

 9    13:19:10  9    Brenda Wood?

10    13:19:11 10       A.   Yes.

11    13:19:12 11       Q.   Was anyone else present?

12    13:19:13 12       A.   Not that I recall, no.

13    13:19:15 13       Q.   You had testified earlier that when you met

14    13:19:24 14    with Brenda Wood near the time your employment began

15    13:19:27 15    that you had received a copy of the company's employee

16    13:19:29 16    handbook.

17    13:19:30 17           Do you recall that?

18    13:19:31 18       A.   Yes.

19    13:19:31 19       Q.   Near that time, did you also go through some

20    13:19:34 20    training regarding unlawful harassment?

21    13:19:36 21       A.   I don't recall going through training, no.

22    13:19:39 22       Q.   Did you discuss that subject with Brenda Wood?

23    13:19:43 23       A.   I don't recall discussing that, no.

24    13:19:45 24       Q.   You don't recall one way or the other; is that

25    13:19:48 25    right?
```

```
 1    14:44:18  1            MS. VUONG:  Okay.

 2    14:44:18  2            THE VIDEOGRAPHER:  2:43.  Going off record.

 3    14:48:48  3            (Recess taken.)

 4    14:48:48  4            THE VIDEOGRAPHER:  It's 2:48.  Back on record.

 5    14:48:52  5    BY MR. KLINGENBERGER:

 6    14:48:53  6        Q.   Ms. Schmidt, I wanted to ask you a couple of

 7    14:48:55  7    questions about your -- the last meeting you had with

 8    14:48:59  8    Brenda Wood.

 9    14:49:02  9            During that meeting did -- did she refer to

10    14:49:05 10    that as an exit interview or did you consider that kind

11    14:49:08 11    of an exit interview?

12    14:49:12 12        A.   I'm assuming it was my exit interview.  I

13    14:49:18 13    remember I got a form that said "Exit Interview" that I

14    14:49:20 14    needed to fill out.  There was, like, maybe 12 questions

15    14:49:23 15    on it.

16    14:49:24 16        Q.   Okay.  And then during that meeting with

17    14:49:27 17    Ms. Wood did she talk to you -- did you talk to her

18    14:49:31 18    about Dave Robertson?

19    14:49:32 19        A.   Yes.

20    14:49:32 20        Q.   And was that the first time you had told her

21    14:49:35 21    about Dave Robertson during that meeting?

22    14:49:38 22        A.   If I -- yes.

23    14:49:40 23        Q.   When you told her about Dave Robertson, did --

24    14:49:45 24    what did you tell her?

25    14:49:46 25        A.   I told her that the reason that I was leaving
```

1    14:52:17  1        Q.   Well, she didn't say she tolerated it; right?

2              2        A.   Well, that's my perception because I don't

3              3   understand --

4              4             THE REPORTER:  I'm sorry.  One at a time.

5              5             You have to start that over.  She didn't say --

6              6   BY MR. KLINGENBERGER:

7    14:52:25  7        Q.   She didn't say she tolerated it; right?

8    14:52:25  8             She didn't say anything to that effect; right?

9    14:52:27  9        A.   Okay.  No.  She didn't specifically state that.

10   14:52:30 10   That was my perception.  Her answer was the whole old

11   14:52:35 11   school oil field in response to everything.

12   14:52:39 12        Q.   She only said that once; right?

13   14:52:40 13        A.   Correct.

14   14:52:41 14        Q.   And when she said that, you interpreted that to

15   14:52:43 15   mean that she tolerated it?

16   14:52:45 16        A.   That the company tolerated it, yes.  That that

17   14:52:47 17   was the excuse.

18   14:52:48 18        Q.   But she never said that it was excused nor did

19   14:52:51 19   she say it was tolerated; correct?

20   14:52:53 20             MS. VUONG:  Objection.  Asked and answered;

21   14:52:55 21   argumentative.

22   14:52:56 22             You can answer the question.

23   14:52:58 23             THE WITNESS:  That was my perception of it.

24   14:52:59 24   BY MR. KLINGENBERGER:

25   14:53:00 25        Q.   Could you answer my question, please.

```
 1   14:53:01  1      A.   I'm sorry.  You're going to have to ask that --
 2   14:53:01  2   me again.
 3   14:53:02  3      Q.   She never said that it was excused and she
 4   14:53:05  4   never said the company tolerated it; correct?
 5   14:53:07  5      A.   No.  She did not use that specific word, no.
 6   14:53:09  6      Q.   Nor did she word -- say words to that effect;
 7   14:53:11  7   correct?
 8   14:53:11  8      A.   Correct.
 9   14:53:12  9      Q.   And did you say anything else to her about what
10   14:53:14 10   Dave Robertson supposedly said or did other than the
11   14:53:20 11   comment in connection with Lindsay Miller?
12   14:53:25 12      A.   Yes.  I remember I mentioned the gal out there,
13   14:53:29 13   Barbara, and about how Dave was calling her a carpet
14   14:53:33 14   muncher bull dyke.
15   14:53:37 15      Q.   And you told Brenda that Dave Robertson was
16   14:53:46 16   calling Barbara that?
17   14:53:48 17      A.   Correct.
18   14:53:49 18      Q.   Did you say anything else to Ms. Wood during
19   14:53:51 19   that meeting, that exit interview, about anything
20   14:53:55 20   Dave Robertson said to you or to Ms. Miller that you
21   14:54:00 21   felt was inappropriate?
22   14:54:01 22      A.   I don't recall what else, if I did say anything
23   14:54:03 23   else.  I don't recall at this point.
24   14:54:06 24      Q.   Did you explain to Ms. Wood why you had not
25   14:54:17 25   reported this information to her earlier?
```

SAMARA HELEEN SCHMIDT, VOL II                                    07-22-13

Page 294

```
 1    STATE OF CALIFORNIA )
                          ) ss.
 2    COUNTY OF KERN      )

 3

 4         I, Terri L. Haupt, a Certified Shorthand

 5    Reporter in the State of California, holding Certificate

 6    No. 6111, do hereby certify that SAMARA HELEEN SCHMIDT,

 7    the witness named in the foregoing deposition, was by me

 8    duly sworn; that said deposition was taken Monday,

 9    July 22, 2013, at the time and place set forth on the

10    first page hereof.

11         That upon the taking of the deposition, the

12    words of the witness were written down by me in

13    stenotypy and thereafter transcribed by computer under

14    my supervision; that the foregoing is a true and correct

15    transcript of the testimony given by the witness.

16         Pursuant to Federal Rule 30(e), transcript review

17    was requested.

18         I further certify that I am neither counsel for

19    nor in any way related to any party to said action, nor

20    in any way interested in the result or outcome thereof.

21         Dated this 5th day of August, 2013, at

22    Bakersfield, California.

23

24    _____
      Terri L. Haupt, CSR No. 6111

25
```

Employee Handbook – Braun Electric Company, Inc.

**5012 Acknowledgment of Receipt and At-will Employment**

I have received my copy of the Company's employee handbook. I understand and agree that it is my responsibility to read and familiarize myself with the policies and procedures contained in the handbook.

I understand that the Company can change any and all policies or practices at any time, but that the Company will inform me of any changes to its written policies in writing. The Company reserves the right to change my hours, wages and working conditions at any time. I understand and agree, that other than the president of the Company, no manager, supervisor or representative of the Company has authority to enter into any agreement, express or implied, for employment for any specific period of time, or to make any agreement for employment other than at-will; only the president has the authority to make any such agreement and then only in writing signed by the president.

I understand and agree that nothing in the employee handbook creates or is intended to create a promise or representation of continued employment and that employment at the Company is employment at-will; employment may be terminated at the will of either the Company or myself. My signature below certifies that I understand that the foregoing agreement on at-will status is the sole and entire agreement between the Company and myself concerning the duration of my employment and the circumstances under which my employment may be terminated. It supersedes all prior agreements, understandings and representations concerning my employment with the Company.

(Samara) H. Schmidt                                    Date 7/19/2010

Employee's Signature

Samara H. Schmidt

Print Name

Defendant's Exhibit 1
Terri Haupt, CSR# 6111
05-10-13
Samara Helen Schmidt

Revised 11/1/08, 9/1/09
                                                   BE000040

**EXHIBIT C**

1  Anna Y. Park, SBN 164242
   U.S. EQUAL EMPLOYMENT
2  OPPORTUNITY COMMISSION
   255 East Temple Street, Fourth Floor
3  Los Angeles, CA 90012
   Telephone:  (213) 894-1108
4  Facsimile:  (213) 894-1301

5
   Rumduol Vuong, SBN 264392
6  U.S. EQUAL EMPLOYMENT
   OPPORTUNITY COMMISSION
7  2300 Tulare Street, Suite 215
   Fresno, CA 93721
8  Facsimile: (559) 487-5053
   Telephone: (559) 487-5135
9

10 Attorneys for Plaintiff U.S. EEOC

11
                  UNITED STATES DISTRICT COURT
12                EASTERN DISTRICT OF CALIFORNIA

13 U.S. EQUAL EMPLOYMENT          )  Case No.:  1:12-CV-01592 LJO SMS
14 OPPORTUNITY COMMISSION,        )
                                  )  **PLAINTIFF EEOC's INITIAL**
15          Plaintiff,            )  **DISCLOSURES**
16     v.                         )
                                  )
17 BRAUN ELECTRIC COMPANY, AND    )
   DOES 1-10, INCLUSIVE,          )
18                                )
19          Defendants            )
                                  )
20 _____

21        Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") hereby makes the

22 following disclosures to Defendants Braun Electric Company ("Defendants") pursuant to Federal

23 Rule of Civil Procedure 26(a).  The EEOC reserves the right to supplement, amend, and/or

24 correct the disclosures made herein.

25 **I.      WITNESSES**

26        Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), the EEOC provides the following list of names

27 and the last known addresses and telephone numbers of individuals who may have knowledge of

28

discoverable information that the EEOC may use to support its claims, unless solely for

impeachment:

        1.     Samara Schmidt

c/o U.S. Equal Employment Opportunity Commission

255 E. Temple Street, Fourth Floor

Los Angeles, CA 90012

(559) 487-5135

     Ms. Schmidt is the claimant in this case.  She is likely to have relevant information

regarding sexual harassment suffered by Samara Schmidt and similarly situated female

employees, Defendant's policies, practices, and procedures regarding sex harassment, and

damages relating to sexual harassment.  The EEOC represents Ms. Schmidt's interest in this

matter.  Accordingly, please be advised that communications with Ms. Schmidt without the

permission of the EEOC would violate ethical rules governing ex parte contacts.


        2.  Dave Robertson

c/o Randy Rump

1401 19th Street, Suite 200

Bakersfield, CA 93301

(661) 322-4600

     Mr. Robertson was previously employment by Defendant, who are believed to possess

information regarding Mr. Robertson's last known address and phone number.  The EEOC

believes that Mr. Robertson is currently represented and may be contacted through legal counsel

Randy Rump at the above information.   Mr. Robertson is likely to have relevant information

regarding sexual harassment suffered by Samara Schmidt and similarly situated female

employees, Defendant's policies, practices, and procedures regarding sex harassment, and sexual

harassment allegation made against him.

/ / /

/ / /

3.  Brenda Wood

3019 Verdugo Lane

Bakersfield, CA 93312

661-587-9663

Ms. Wood is currently employed by Defendants.  Defendants are believed to possess information regarding her last known address and phone number.  Ms. Wood is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, and sexual harassment allegation made against Dave Robertson.

4.  Lindsey Miller

13807 Costajo Road

Bakersfield, CA 93313

Ms. Miller was employed by Defendants.  Defendants are believed to possess information regarding her last known address and phone number.  Ms. Miller is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, sexual harassment allegation made against Dave Robertson, and damages relating to sexual harassment.

5.  Thomas Horan

3717 Liz Drive

Bakersfield, CA 93312

661-978-4237

Mr. Horan was/is employed by Defendants.  Mr. Horan is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

6.  Isaac Nunez

Mr. Nunez was/is employed by Defendants.  Defendants are believed to possess information regarding his last known address and phone number.  Mr. Nunez is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

7.  Tony Mejia

Mr. Mejia was/is employed by Defendants.  Defendants are believed to possess information regarding his last known address and phone number.  Mr. Mejia is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

8.  Dennis Brown

Mr. Brown was/is employed by Defendants.  Defendants are believed to possess information regarding his last known address and phone number.  Mr. Brown is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

9.  Earnie White

Mr. White was/is employed by Defendants.  Defendants are believed to possess information regarding his last known address and phone number.  Mr. White is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

10. Oscar Sandoval

Mr. Sandoval was/is employed by Defendants.  Defendants are believed to possess information regarding his last known address and phone number.  Mr. Sandoval is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

11. Richard Ege

Mr. Ege was/is employed by Defendants.  Defendants are believed to possess information regarding his last known address and phone number.  Mr. Ege is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

12. Terry Yeargan

Mr. Yeargan was/is employed by Defendants.  Defendants are believed to possess information regarding his last known address and phone number.  Mr. Yeargan is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

13. John Artz

Mr. Artz was/is employed by Defendants.  Defendants are believed to possess information regarding his last known address and phone number.  Mr. Artz is likely to have relevant information regarding sexual harassment suffered by Samara Schmidt and similarly situated female employees, Defendant's policies, practices, and procedures regarding sex harassment, as well as sexual harassment allegation made against Dave Robertson.

## II.    **DOCUMENTS, ESI, ETC.**

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), the EEOC identifies the following documents that are in the possession, custody, or control of the EEOC and which the EEOC may use to support its claims: All non privileged documents contained in EEOC administrative investigative file (Charge No. 485-2011-00459), including but not limited to the charge of discrimination by Charging Party Samara Schmidt; correspondence between the EEOC to Defendant Braun Electric; documents provided by Defendant Braun Electric during the administrative phase; notes taken by EEOC personnel during interviews of Dave Robertson, Thomas Horan, and Brenda Wood;  Samara Schmidt's personnel file; Dave Robertson's personnel file; Samara Schmidt and Lindsey Miller's deposition transcripts; various documents regarding complaints of sexual harassment against Dave Robertson made by Lindsey Miller and Samara Schmidt; documents provided by Charging Party Samara Schmidt regarding her earnings; photographs provided by Charging Party Samara Schmidt; and Defendant Braun Electric's list of employees.

## III.    **Damages**

The EEOC intends to seek all allowable damages under Title VII of the Civil Rights Act of 1964 and Title I of Civil Rights Act of 1991, including back pay, front pay, interest, medical expenses, compensatory and punitive damages and injunctive relief.  Plaintiff seeks the statutory cap on compensatory and punitive damages for each Charging Party and class member.  The EEOC also intends to seek all prohibitive and mandatory injunctive relief available pursuant to the statute.

Dated: January 16, 2013

                      U.S. EQUAL EMPLOYMENT
                      OPPORTUNITY COMMISSION
                      Anna Y. Park
                      Rumduol Vuong

                      / s/Rumie Vuong
                      Rumie Vuong
                      Attorney for Plaintiff EEOC

1

## PROOF OF SERVICE

2

3       I am, and was at the time the herein mentioned delivery took place, a citizen of the

4   United States, and over the age of eighteen (18) years.

5       I am employed in the Litigation Unit of the United States Equal Employment

6   Opportunity Commission, Fresno Local Office.  My business address is Equal Employment

7   Opportunity Commission, 2300 Tulare Street, Suite 215, Fresno, CA 93721.

8       On the date that this declaration was executed, as shown below, I served the foregoing

9   **PLAINTIFF EEOC'S INITIAL DISCLOSURES** via electronic and U.S. Mail in a sealed

10  envelope with postage therein fully prepaid, in regular mail at Fresno, County of Fresno, State of

11  California, which was addressed as follows:

12
                              Daniel K. Klingenberger
13                            Micah K. Nilsson
                          DOWLING AARON INCOPORATED
14                        5080 California Avenue, Suite 200
                              Bakersfield, CA 93309
15                               (661) 716-3000
                                 (661) 716-3005
16                          dkk@dowlingaaron.com
                          mnilsson@dowlingaaron.com
17

18
        I declare under penalty of perjury that the foregoing is true and correct.
19
    Executed on January 16, 2013 at Fresno, California.
20

21

22                              /s/ *Rumie Vuong*
                          _____
23                              Rumie Vuong

24

25

26

27

28

**EXHIBIT D**

1                   UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF CALIFORNIA

3                        (FRESNO DIVISION)

4

5     EQUAL EMPLOYMENT           )
      RTUNITY COMMISSION,        )
6                                )
              Plaintiffs,        )
7                                )
        vs.                      )    No. 1:12-cv-01592-LJO-JLT
8                                )
      N ELECTRIC COMPANY, and    )
9     1-10, Inclusive,           )
                                 )
10            Defendants.        )
      _____)
11

12

13                   VIDEOTAPED DEPOSITION

14                           OF

15                     DEBRA SUE RIOS

16                Friday, December 20, 2013

17                Bakersfield, California

18

19

20

21

22

23

24

25   rted by:  Patricia Kerchner, CSR No. 12017


                        Debra Sue Rios

| | | | |
|---|---|---|---|
| 1 | 09:22:31 1 | A. | Uhm, I want to say maybe like two or three |
| 2 | 09:22:37 2 | weeks ago. | |
| 3 | 09:22:38 3 | Q. | Where did you meet with her then? |
| 4 | 09:22:47 4 | A. | On -- an office on Stockdale Highway. |
| 5 | 09:22:51 5 | Q. | At the DFEH's office?  Dep- -- |
| 6 | 09:22:58 6 | A. | DFEH? |
| 7 | 09:22:59 7 | Q. | Department of Fair Employment & Housing? |
| 8 | 09:23:01 8 | A. | I think -- I think that was it, yes. |
| 9 | 09:23:05 9 | Q. | And the time before that, when did you meet |
| 10 | 09:23:07 10 | with her? | |
| 11 | 09:23:09 11 | A. | I don't know when it was before that. |
| 12 | 09:23:11 12 | Q. | Was it quite a few months before? |
| 13 | 09:23:16 13 | A. | I think so, yes. |
| 14 | 09:23:17 14 | Q. | Do you think it was more than six months? |
| 15 | 09:23:22 15 | A. | I really don't know. |
| 16 | 09:23:23 16 | Q. | Can you give me your best estimate of when |
| 17 | 09:23:26 17 | you -- before you answer that question, I take it | |
| 18 | 09:23:31 18 | the -- the meeting prior to when you met with her two | |
| 19 | 09:23:35 19 | or three weeks ago must have been the first time you | |
| 20 | 09:23:37 20 | met with her? | |
| 21 | 09:23:40 21 | A. | I believe so, yeah. |
| 22 | 09:23:42 22 | Q. | Okay.  And can you give me your best |
| 23 | 09:23:47 23 | estimate on when that meeting occurred? | |
| 24 | 09:23:56 24 | A. | You're asking me to take a guess.  I |
| 25 | 09:23:58 25 | really -- I -- I don't know when it was.  I really | |

Debra Sue Rios

```
 1    09:24:01  1 don't know.
 2    09:24:02  2       Q.  And I don't want you to guess for purposes
 3    09:24:04  3 of the deposition, obviously --
 4    09:24:05  4       A.  Yeah.
 5    09:24:05  5       Q.  -- because your testimony is under oath,
 6    09:24:07  6 but -- and I realize that events that occurred in the
 7    09:24:10  7 past, sometimes our memory gets foggy about them or,
 8    09:24:13  8 you know, specific dates.  That's all very common
 9    09:24:16  9 and -- and normal.  But even though I don't want you
10    09:24:18 10 to guess, I'm still entitled to your best estimate.
11    09:24:21 11 So to the extent you can give that to me, then --
12    09:24:24 12 then I'd like it.
13    09:24:25 13       You know, for example, if the -- you met
14    09:24:28 14 with her two or three weeks ago, but the meeting
15    09:24:31 15 before that was -- was many months before, you know,
16    09:24:35 16 that still leaves, for example, a lot of 2013 when
17    09:24:39 17 the meeting might have occurred, or -- or was it, you
18    09:24:41 18 know, even into 2012.
19    09:24:46 19       A.  It could have been sometime at the end of
20    09:24:49 20 2012 or early 2013.  I really -- I don't know and
21    09:24:54 21 you're asking me to guess.  I -- I really don't know.
22    09:24:56 22       Q.  Well -- and, again, I don't want you to
23    09:24:58 23 guess.  Is it your best estimate that it was probably
24    09:25:01 24 in the last month or so of 2012 or early 2013?
25    09:25:13 25       A.  I don't know.  I -- I -- I don't know.
```

Debra Sue Rios

1  STATE OF CALIFORNIA )
                       )  ss.
2  COUNTY OF KERN      )

3

4       I, Patricia Kerchner, a Certified Shorthand

5  Reporter in the State of California, holding Certificate

6  No. 12017, do hereby certify that DEBRA SUE RIOS, the

7  witness named in the foregoing deposition, was by me

8  duly sworn; that said deposition was taken Friday,

9  December 20, 2013, at the time and place set forth on

10  the first page hereof.

11       That upon the taking of the deposition, the

12  words of the witness were written down by me in

13  stenotypy and thereafter transcribed by computer under

14  my supervision; that the foregoing is a true and correct

15  transcript of the testimony given by the witness.

16       Pursuant to Federal Rule 30(e), transcript

17  review was requested.

18       I further certify that I am neither counsel for

19  nor in any way related to any party to said action, nor

20  in any way interested in the result or outcome thereof.

21       Dated this 2nd day of January, 2014, at

22  Bakersfield, California.

23

24  _____
    Patricia Kerchner, CSR No. 12017

25