**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>BRAUN ELECTRIC COMPANY, and DOES 1-10,<br><br>    Defendants. | 1:12-CV-01592-LJO-JLT<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**<br>(Doc. 50) |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

**INTRODUCTION**

The U.S. Equal Employment Opportunity Commission ("EEOC") brought this action for

1

violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 against Defendant Braun Electric Company ("Braun") to seek relief for charging party Samara Schmidt ("Schmidt") and other similarly situated individuals who were adversely affected by Braun's unlawful conduct. After filing the complaint and obtaining information through the discovery process, the EEOC identified Debra Rios ("Rios") as an interested party seeking relief through this action. Currently before the Court is Defendant Braun's motion for summary judgment, or, in the alternative, summary adjudication of the EEOC's complaint. For the reasons discussed below, the Court DENIES Braun's motion and ORDERS the parties to submit supplemental briefing.

## BACKGROUND

**A. Facts**

Schmidt was employed by Braun from approximately July 2010 until her departure on May 13, 2011 after starting as a temporary worker. Rios was employed by Braun from 2004 until 2012. David Robertson ("Robertson") was employed as a Senior Project Manager at Braun from approximately 1999 until his termination following Schmidt's complaint in 2011. For purposes of this motion, the parties agree that Schmidt and Rios were subject to actionable sexual harassment at the workplace during their employment at Braun.

Crystal Lewis ("Lewis") was employed by Braun from 2004 to 2008. During her employment, Robertson made a sexual comment to her about a "dominatrix." Lewis verbally complained about Robertson's comment to Braun's Human Resources Manager Brenda Wood ("Wood"). A few days later, Robertson apologized to Lewis for his comment and did not make further sexual comments to her during her employment at Braun.

Shortly after Rios began her employment at Braun in 2004, she began complaining to her supervisor Tom Horan ("Horan") and later to Braun's Vice President David Reed ("Reed") about Robertson's behavior toward her and that Robertson subjected her to unwanted touching. Rios spoke to Horan many times about Robertson's conduct. Rios pointed out to Horan that he can hear what Robertson was saying to her, told Horan she found it unacceptable, and asked Horan why nothing was being done about Robertson's conduct. Rios also spoke with Reed twice about Robertson's unwanted touching, including draping his arm around her shoulders, and, if not stopped at that point, dropping

2

his hand down her back. In addition, on four or five separate occasions, Rios called Vice President Reed over to listen to what Misty Hunt ("Hunt"), another Braun employee, had to say regarding Robertson's conduct toward her. After Lindsey Miller ("Miller") began her employment with Braun, Rios stated to Reed that Robertson was talking to Miller the way he had talked to Hunt.

In August 2010, an anonymous male caller complained to Wood that Robertson was making sexual comments to Miller, who was under Robertson's supervision. The caller told Wood that, at a company barbeque, Robertson stated that Miller would strip on a pole and that Miller had brought cookies made from her breast milk. Wood contacted Miller as a result of the complaint and met with her. Miller informed Wood that Robertson regularly made sexual comments to her and to other female employees. Robertson stated that he wanted to put Miller and another female together and eat them like a Big Mac and called Miller "Princess Lay Me" at a work meeting with other attendees present. The EEOC also introduces evidence that Robertson told Miller he wanted to spank her with a greasy spatula on a weekly basis, offered Miller "peniscillin [sic]" on multiple occasions, commented that Miller's perfume smells like "teenage pussy," and stated that he wanted to drink her bath water and rape her with a garden weasel. (Doc. 59, Exh. J). During Miller's meeting with Wood, Wood told Miller that Robertson was "old school oil field" and that Miller should not take any offense.

After meeting with Miller, Wood contacted and met with Vice President Reed about Robertson, and they decided to write him up and give him a warning. Reed summoned Robertson, and they met with Wood. During the meeting, Robertson received a written "Discipline Action Form" in his file and was counseled verbally and in writing that further harassing conduct could lead to greater discipline. Robertson admitted making sexual comments to Miller. After signing his write-up, Robertson slammed his fist into Wood's desk and stated "I'll never come back in your office. I'll be a good boy." (Woods Dep. 100:5-6).

Robertson was instructed not to discuss this matter with Miller. The day after Wood's meeting with Miller, Robertson confronted Miller about the complaint and told her had been written up. When Wood called Miller to check up, Miller told Wood that Robertson confronted her about the complaint. Two months later, Robertson received a monetary bonus from Braun. Robertson continued in a supervisory position over Miller, and no changes were made to his responsibilities, supervisory

3

role, or compensation.

Schmidt was transferred to Robertson's supervision in September 2010. During her employment at Braun, Schmidt complained to Dennis Brown ("Brown"), a safety manager, and Oscar Sandoval ("Sandoval"), a foreman, that she found Robertson's conduct toward her to be offensive. Pursuant to her resignation from Braun, her last day of employment was May 13, 2011. On her last day, Schmidt met with Wood for her exit interview. Schmidt informed Wood that Robertson sexually harassed her during her employment at Braun. Schmidt stated that Robertson called Schmidt a "slippery clitted bulldyke," told Schmidt he wanted to see her and a female co-worker kiss and touch their breasts, and asked Schmidt if she wanted "creamy jizz." Wood told Schmidt that Robertson was "old school oil field" and that was just the way he is.

After Schmidt's exit interview and resignation, Wood interviewed Miller regarding Schmidt's complaints about Robertson. Miller felt threatened by Wood during the interview and told Wood nothing had been done by Braun after she asked for help. The EEOC introduces evidence that Wood then told Miller there was nothing she could do for Miller and that "this better not turn into a lawsuit." (Doc. 59, Exh. J p. 3).

Braun terminated Robertson's employment shortly after Schmidt's complaint to Wood.

At all relevant times, Braun maintained an Employee Handbook. The Handbook outlines Braun's policies and procedures on harassment in the workplace, which instruct employees to "let the offending person(s) know you find the conduct offensive," and to "file an official complaint with the Human Resources department or the President of the Company[.]" (Doc. 50, Exh. A). The Handbook further states that, "[s]upervisors will refer all harassment complaints to the Human Resources Manager, investigative officer, or the president of the Company." *Id.* Wood reviews the Handbook for an hour with new employees as part of orientation when they begin their employment at Braun. Schmidt received a copy of the Handbook.

Braun also provides sexual harassment training to all supervisors, including Robertson. Robertson and Vice President Reed attended sexual harassment training in 2011. The day after the training, Robertson called Reed. Reed asked Robertson what he thought about the training, and Robertson stated, "Well, I guess I can't ask Lindsey Miller to stick my dick down her throat anymore."

(Doc. 59, Exh. L, p. 56). Reed responded, "Easy, cowboy." *Id*.

**B.  Procedural History**

Schmidt filed a charge of discrimination with the EEOC alleging that she was subject to sexual harassment at Braun in violation of Title VII. The EEOC conducted an investigation and issued a Letter of Determination finding that Schmidt and similarly situated individuals were subjected to unlawful discrimination based upon their sex, female, in violation of Title VII. The EEOC provided a proposed conciliation agreement to Braun on July 12, 2012, and the parties held a conciliation conference on July 16, 2012.

The parties failed to conciliate, and the EEOC brought this action against Braun on September 27, 2012 alleging violations of Title VII of the Civil Rights Act of 1964 as well as of Title I of the Civil Rights Act of 1991. Braun filed an answer on November 20, 2012 and the instant motion for summary judgment on February 7, 2014. The EEOC filed an opposition on March 4, 2014, and Braun filed a reply on March 11, 2014.

**DISCUSSION**

**Motion for Summary Judgment**

**A.  Legal Standard**

Fed .R. Civ. P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec*., 475 U.S. at 586, n. 11; *International Union of Bricklayers v. Martin Jaska, Inc*., 752 F.2d 1401, 1405 (9th Cir. 1985).

The evidence of the party opposing summary judgment is to be believed, and all reasonable


inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita*, 475 U.S. at 587. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000); *see, High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–1103; *see, Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see, High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see, Celotex*, 477 U.S.

at 322. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

"In cases that involve ... multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also, Robi v. Five Platters*, Inc., 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

**B.  Analysis**

    **1.**  *Faragher Ellerth* **Affirmative Defense**

Braun agrees, for the purposes of this motion, that Schmidt and Rios were subject to actionable sexual harassment during their employment at Braun in violation of Title VII. Braun argues that it nonetheless escapes employer liability because the *Faragher Ellerth* affirmative defense applies here. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Therefore, the issue is whether Braun meets its burden under the *Faragher Ellerth* test of showing that 1) Braun exercised reasonable care to prevent and correct promptly any harassing behavior; and 2) Schmidt unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001) (citing *Ellerth*, 524 U.S. at 765 and *Faragher*, 524 U.S. at 806). The EEOC argues that Braun fails to meet the first prong of the *Faragher Ellerth* test and that the defense is therefore unavailable. The Court agrees.

The Ninth Circuit construes the reasonable care standard in the first prong of the *Faragher Ellerth* test "to require both preventive and remedial measures." *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1185 (9th Cir. 2005) (citing *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1180-81 (9th

Cir. 2001)). The Ninth Circuit has "held that a company's adoption of an anti-harassment 'policy and its efforts to disseminate the policy to its employees establish that [the employer] exercised reasonable care to prevent sexual harassment in the workplace.'" *Id*. (citing *Kohler*, 244 F.3d at 1181). "In addition, however, [the employer] must have taken steps to correct [the] particular situation promptly." *Id*. *See*, *Bauer v. Carson Tahoe Hosp*., 212 F. App'x 654, 655 (9th Cir. 2006) (stating that "the promulgation of an anti-harassment policy will not in and of itself discharge an employer's burden under the first prong[.]").

The EEOC does not appear to challenge the facial reasonableness of Braun's anti-harassment policy. Rather, the EEOC argues that Braun failed to exercise reasonable care in implementing the policy to correct the harassment situation with Robertson. (Doc. 59, p. 17).

The Ninth Circuit has explained that "[n]otice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is 'reasonably calculated to end the harassment.'" *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) (citing *Nichols v. Azteca Rest. Enters., Inc*., 256 F.3d 864 (9th Cir. 2001); *Fuller v. City of Oakland*, 47 F.3d 1522, 1528 (9th Cir. 1995); *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)). "If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have 'adopt[ed] the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy.'" *Id*. (quoting *Faragher*, 524 U.S. at 789).

Braun asserts it adequately investigated and took appropriate action to correct Robertson's harassment in response to the two formal complaints made to Wood – the complaint regarding Miller in August 2010 and Schmidt's complaint in May 2011. Braun further argues that it had no notice of any other complaints or issues regarding Robertson's conduct and therefore no duty to take any other or additional corrective action because those were the only two complaints made to the Human Resources Manager, Wood. *See*, *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) (finding that an employer cannot be held liable for misconduct of which it is unaware). The employer's liability, if any, runs only from the time it "knew or should have known about the conduct and failed to stop it." *Ellerth*, 524 U.S. at 759; *see also*, *Brooks*, 229 F.3d at 924.

There is a genuine issue of material fact as to whether Braun knew or should have known about Robertson's improper conduct outside of the two complaints made to Wood. First, Braun's handbook instructs employees to lodge complaints with Wood or the president of the company, and states that supervisors will refer all harassment complaints to the Human Resources Manager, an investigative officer, or the president of the company. (Doc. 50, Exh. A). On its face, Braun's Handbook lays out procedures for putting the company on notice of sexual harassment other than by making a formal complaint with Wood. Specifically, employees are instructed to make complaints to the president, and the Handbook implies that employees may also complain to supervisors, who refer all complaints to Wood or the president.[1] *Id*. The EEOC introduces evidence that Lewis complained to Wood about Robertson's sexual comments between 2004 and 2008, prior to the complaint about his comments to Miller. (Doc. 59, Exh. H). The EEOC also introduces evidence that Rios repeatedly complained to her supervisor, Horan, about Robertson's unwanted touching prior to the Miller complaint. (Doc. 59, Exh. I). In addition, Schmidt complained about Robertson to Brown and Sandoval, who arguably play supervisory roles at Braun. Also, in response to a formal complaint made to Wood about Robertson, Wood contacted Vice President Reed, and they determined and carried out Braun's corrective action. Although Reed is the Vice President rather than the President, his role in the sexual harassment reporting and discipline procedure gives rise to the inference that putting him on notice of Robertson's harassment may also put Braun on notice of the same. Further, as Vice President of the company, Reed is certainly a supervisor and, according to Handbook guidelines, must refer all harassment complaints to Wood or the president of the company. The EEOC introduces evidence that Rios complained to Reed about Robertson's unwanted touching and that, on four or five separate occasions, Rios called Reed's attention to Hunt's complaints about Robertson's sexual comments. *Id*. If the EEOC is able to prove that Braun knew or should have known about Robertson's harassment from these other complaints, Braun's obligation to take prompt corrective action would have been triggered before the Miller formal complaint. *Swenson*, 271 F.3d at 1192. Further, Braun's corrective measures as to the two formal complaints against Robertson then would be evaluated in the context of Braun having notice of prior harassment complaints against Robertson.

---

[1] Braun does not have and never had an investigative officer. (Wood Dep. 33:21-34:11).

9

Even if Braun establishes that it lacked notice of Robertson's other harassing conduct, Braun fails to show that its corrective actions in response to the two formal complaints against Robertson were reasonable as a matter of law. "The reasonableness of the remedy depends on its ability to: (1) 'stop harassment by the person who engaged in harassment;' and (2) 'persuade potential harassers to refrain from unlawful conduct.'" *Nichols*, 256 F.3d at 875 (citing *Ellison*, 924 F.2d at 882).

Braun fails to show that it took reasonable corrective measures in response to the complaint that Robertson sexually harassed Miller. Following the complaint, Wood met with Miller once for about twenty minutes, and, after Miller confirmed the harassment, Wood told her that Robertson was "old school oil field" and not to take offense from his improper sexual conduct. Robertson admitted to Wood that he made sexual comments to Miller. Wood and Reed verbally counseled Robertson against further harassment and placed a Disciplinary Action Form in his file. Besides this, Robertson's employment was not affected in any way until Schmidt's formal complaint and resignation in May 2011. Robertson received a bonus from Braun two months after he admitted to sexually harassing Miller. After Wood instructed Robertson to refrain from contacting Miller about the complaint, Miller informed Wood that Robertson pulled her outside and confronted her about the complaint. Braun continued to place Miller under Robertson's supervision. After Reed disciplined Robertson for sexually harassing Miller, and after receiving sexual harassment training, Robertson stated to Reed, "Well, I guess I can't ask Lindsey Miller to stick my dick down her throat anymore," to which Reed responded, "Easy, cowboy." Braun's corrective actions in response to Robertson's admitted harassment of Miller are not "reasonably calculated to end the harassment." *Swenson*, 271 F.3d at 1192 (citing *Nichols*, 256 F.3d 864). Braun's handling of Robertson's harassment failed to "stop harassment by the person who engaged in harassment;" and did little if anything to "persuade potential harassers to refrain from unlawful conduct." *Nichols*, 256 F.3d at 875 (citing *Ellison*, 924 F.2d at 882). Rather, evidence suggests that Braun's "inadequate action" may have "embolden[ed] the harasser to continue his misconduct." *Swenson*, 271 F.3d at 1192 (quoting *Faragher*, 524 U.S. at 789).

Although Braun conducted a more comprehensive investigation and terminated Robertson in response to Schmidt's complaint, Braun nonetheless fails to show that its corrective measures were reasonable as a matter of law. Wood interviewed Miller again in 2011 during the investigation of

10

Schmidt's complaint against Robertson. The EEOC introduces evidence that, when Miller said she asked for help from Braun with Robertson's harassment and Braun did nothing, Woods stated she could do nothing for Miller and told Miller "this better not turn into a lawsuit." (Doc. 59, Exh. J, p. 3). Such an approach toward an employee who has been admittedly harassed is not "reasonably calculated to end the harassment." *Swenson*, 271 F.3d at 1192 (citing *Nichols*, 256 F.3d 864). Further, employers may not retaliate against an employee for complaining about sexual harassment in the workplace. 42 U.S.C.A. § 2000e-3(a). Moreover, Wood knew Miller feared for her job security in connection with the complaint against Robertson, who was her supervisor. (Doc. 59, Exh. D).

Because there is a genuine issue of material fact as to whether Braun knew or should have known about Robertson's other harassment and because Braun fails to show that it took remedial measures that were reasonably calculated to end the harassment in response to the formal complaints made against Robertson, Braun fails to meet its burden under the first prong of the *Faragher Ellerth* test. Therefore, the *Faragher Ellerth* affirmative defense against employer liability is unavailable to Braun, and Braun's motion for summary judgment is DENIED.

**2.      Debra Rios**

Schmidt filed a charge of discrimination with the EEOC alleging that she was subject to sexual harassment at Braun in violation of Title VII. The EEOC conducted an investigation and issued a Letter of Determination finding that Schmidt and similarly situated individuals were subjected to unlawful sex discrimination in violation of Title VII. The EEOC provided a proposed conciliation agreement to Braun on July 12, 2012 seeking a monetary sum for Schmidt as the charging party and a monetary sum for a class fund for "a class of women whom the EEOC determines are entitled to relief in this matter." (Doc. 50, Attachment 3, p. 5). The parties held a conciliation conference on July 16, 2012. Braun introduces evidence that the EEOC continued to pursue a monetary sum for charging party Schmidt at the conference but not for the class or for Rios. (Doc. 50, Attachment 2 4:4-8).

In its complaint, the EEOC states that it brings this action to seek relief for charging party Schmidt and other similarly situated individuals who were adversely affected by Braun's alleged unlawful conduct. (Doc 1).

During discovery, the parties submitted a Joint Statement of Discovery Disagreements on

January 3, 2014. In the Joint Statement, Braun states, "[i]n addition, the EEOC has indicated that it considers Debra Rios an additional interested party." (Doc. 34, p. 9). The parties now dispute the viability of "Rios' claims."

In its complaint and conciliation offer, the EEOC identified Schmidt as the sole charging party for whom they are seeking relief in this matter. The EEOC has not sought leave to amend its complaint. The parties provide no guidance to the Court as to whether the EEOC seeks to add Rios as a second charging party or if Rios is simply a purported member of the class of similarly situated individuals who were adversely affected by Braun's unlawful conduct.

Therefore, the parties are ORDERED to submit supplemental briefing to clarify Rios' status in this action as well as its impact, if any, on the conditions preceding litigation that must be met and the nature and scope of the EEOC's claims as stated in the complaint. 42 U.S.C. § 2000e-5.

## CONCLUSION AND ORDER

For the reasons discussed above, the Court:

1. DENIES Defendant Braun Electric Company's motion for summary judgment as to Plaintiff EEOC's complaint; and

2. ORDERS the parties to submit supplemental briefing, not to exceed ten pages, as to Debra Rios by no later than March 30, 2014.

IT IS SO ORDERED.

Dated:   **March 24, 2014**             /s/ Lawrence J. O'Neill
                                      UNITED STATES DISTRICT JUDGE

3.